## ST. LOUIS S. W. RY. CO. OF TEXAS v. DAVY BURNT CLAY BALLAST CO.  (No. 9344.)

(Court of Civil Appeals of Texas. Dallas. April 11, 1925. Rehearing Denied June 6, 1925.)

1. Appeal and error ⚖==193(5)—Failure of foreign corporation to allege permit to do business in state, in petition for balance due on contract performed in state, fundamental error.

Failure of foreign corporation, suing for balance due on contracts to be performed in Texas, to allege issuance of permit, under Vernon's Sayles' Ann. Civ. St. 1914, art. 1314, to do business in state, held fundamental error, in view of article 1318.

2. Corporations ⚖==661(6) — Foreign corporation suing railroad on contract for burning ballast held not exempt from statute requiring permit to do business in state as corporation created to, "maintain" railway.

Foreign corporation, suing railroad for balance due on contract for burning ballast, held not exempt from provisions of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1314–1321, requiring permit to do business in state, as corporation created for purpose of "maintaining" railway within article 1319; "maintain" meaning to hold or keep in any particular state or condition, support, sustain, uphold, keep up, keep possession of, continue, bear expense of, not to surrender or suffer to cease or fail.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series; Maintain.]

On Motion for Rehearing.

3. Appeal and error ⚖==714(1) — Appellate court must act only on information in record, and parties' admissions.

Appellate court must act only on information in record on appeal or parties' admissions, so made as to authorize their acceptance and action thereon, and assume that all material facts known by parties interested in presenting them have been properly alleged and established as far as possible by proper evidence, especially

---

⚖==For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

where failure to establish and include omitted fact is sought to be justified on ground that its establishment was unnecessary, and certificates as to such fact, attached to motion for rehearing and reply, cannot be considered.

**4. Corporations ⬉661(6) — Conclusion that permit to do business in state was not issued to plaintiff foreign corporation held justified.**

Conclusion that permit to do business in state had not been issued to foreign corporation, suing on contract performed therein, *held* justified by plaintiff's failure to allege issuance thereof and effort to show, in its brief on appeal, that it was relieved from complying with provisions of Vernon's Sayles' Ann. Civ. St. arts. 1314–1321, by article 1319.

**5. Appeal and error ⬉882(3)—Foreign corporation, insisting on exemption from requirement of permit to do business cannot complain, on appeal, of law denying it right to maintain suit.**

Foreign corporation, not alleging permit to do business in state, in petition for balance due on contract performed therein, and insisting that it was relieved from complying with provisions of Vernon's Sayles' Ann. Civ. St. 1914, arts. 1314–1321, by article 1319, cannot complain of article 1318, denying it right to maintain suit.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by the Davy Burnt Clay Ballast Company against the St. Louis Southwestern Railway Company of Texas and another. From a judgment against the named defendant, it appeals. Reversed and dismissed.

W. B. Hamilton, J. E. Gilbert, and E. B. Perkins, all of Dallas, for appellant.

Cox, Fulton & Dickey, of Wichita Falls, for appellee.

VAUGHAN, J. Under the view we take of this case, it is only necessary to discuss one of the many assignments of error on which this appeal is prosecuted, to wit:

"Where plaintiff, a foreign corporation, doing business in Texas under contracts made and performed in Texas, sued upon such contracts, it must both allege and prove that it has a permit to do business in Texas, and failure to do so is fundamental error, and the court should have instructed a verdict for defendant."

This suit was instituted by appellee, Davy Burnt Clay Ballast Company, a foreign corporation, in the court below, on the 17th day of November, 1922, against appellant and Walker D. Hines, Director General of Railroads, for an alleged balance due upon contract for the burning of ballast by the appellee for the appellant railway company at ballast pits near Josephine, Tex. Appellee, in its petition, alleged that it is a "private corporation organized and existing under and by virtue of the laws of the state of Wisconsin," but it is not alleged that there had

been issued to it by the secretary of state a permit to transact business in this state. Upon the trial, the suit was dismissed as to the Director General of Railroads, and a verdict rendered on peremptory instructions in favor of appellee against appellant for the sum of $10,590.44, on which judgment was rendered January 17, 1924, for said sum. The contracts furnishing the basis for the litigation are quite lengthy; therefore only a brief résumé will be given, so as to develop the case sufficiently to be properly understood as applied to the proposition on which this appeal is determined.

The places where the ballast was burned by appellee and delivered to appellant are referred to as "pit No. 1 and pit No. 2, at Josephine, Tex." The ballast burned in pit No. 1 was under and by virtue of a contract dated June 22, 1908, and a supplement thereto called an "extension agreement," dated January 5, 1910. The contract providing for burning of ballast in pit No. 2 is dated July 22, 1914. The land is located in Collin county, Tex., where the work provided for in said contracts was performed. The contract relating to pit No. 1 provided that appellee would burn 200,000 cubic yards of burnt clay ballast between Clinton and Josephine on appellant's line of railway, and to complete the burning of same not later than December 31, 1909, appellee to furnish the necessary lands from which to procure the required material for such ballast and to furnish all materials, tools, labor, and appliances except as otherwise specified in the contract, and that appellant would furnish sufficient wood for starting or relighting the fires, and the necessary coal for the burning of the ballast, all at the pits, free of cost to appellee; that appellant would, upon the written request of appellee, furnish free transportation over its line of railway to such agents, officers, and employés of appellee as might be actually necessary for the performance of the work and for their return over said lines to any destination on appellant's line of railway which might be designated after the termination of the work, but only to such agents and employés engaged exclusively in the performance thereof, and to transport, free of charge, such machinery, tools, supplies, and material, including camp outfit and supplies, over its line of railway, as might be actually necessary to properly carry out the provisions of the contract, and for the return of said machinery, tools, supplies, and material over said lines to any destination on appellant's line of railway which appellee might designate after the termination of the work, appellee to pay all the switching, terminals, bridge, or other charges to make delivery to or from appellant's lines of railway.

It was provided further in said contract

---

⬉For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

that, should the provision relating to transportation be held invalid under the law of any state, or the United States, at any time, then appellee should pay appellant, at full tariff rates, for all such transportation, and, in the event appellee should pay such transportation to appellant, the compensation to be paid by appellant to appellee should be an amount equal to such transportation charges plus 18 cents per cubic yard for the ballast burned and furnished to appellant.

Appellant agreed to receive the 200,000 cubic yards of ballast at said location during the life of the contract, and to pay for the same at the rate of .18 cents per cubic yard in pit. Appellant was accorded the option of requiring appellee to burn and furnish 200,-000 additional cubic yards of ballast at the same place and price and under the same terms and conditions, by notifying appellee of its election to take such additional amount not later than the date of the completion of 150,000 cubic yards, provided the necessary land could be obtained at reasonable cost.

The verdict is made up of the following items: 577,809 cubic yards of ballast at 18 cents per cubic yard in pit No. 1; 323,376 cubic yards in pit No. 2, 18 cents per cubic yard; the sum of $2,549.12, refund of fares and freight; less credits aggregating $152,-445.42, paid for ballast to appellee, and a further credit of $1,626.20 paid for appellee by appellant in settlement of certain suits.

Appellee alleged that it furnished to appellant in pit No. 2, under contract of July 22, 1914, 328,756 cubic yards of ballast at 18 cents per cubic yard, in accordance with the contract, $59,176.08, and that it received payment for 198,725 cubic yards at 18 cents per cubic yard, $35,700.50, and 122,172 cubic yards at 18 cents per cubic yard, less 10 per cent. retained under contract, $19,791.86, making a total of $55,562.36, leaving a balance, after deducting all payments, of $3,-613.72; that there was also due it the sum of $2,549.12, covering refund of fares and freight as provided in the various contracts; that the two contracts covering pits Nos. 1 and 2 are separate and distinct transactions; that the dispute between appellant and appellee has arisen "by the fact that the defendant has had remeasurements taken of the tops on the first pit on the basis of paragraph 9 of the contract of July 22, 1914, which contract in no way, manner, form, or construction, could be considered as having any relation or bearing upon the ballast furnished in pit No. 1."

Of the different pleas comprising defendant's answer, it is only necessary to state that same contained a general demurrer and general denial. This exception to appellee's petition was duly presented to and overruled by the court, to which proper exception was noted and here presented by appropriate assignments of error and proposition.

[1] All of the services contracted to be performed by appellee under the several contracts with appellant, by which appellant was to be furnished ballast by appellee, were by the terms of the contract to be performed, and were in fact performed, in the state of Texas. Appellee alleges in its petition that it was a private corporation, existing under and by virtue of the laws of the state of Wisconsin, but it does not allege that there had been issued to it by the secretary of state a permit authorizing it to do business in the state of Texas, and we find as a fact that such permit had not been issued to appellee. The question raised is one of fundamental error. Article 1318, V. S. T. C. S. 1914; Rexall Drug Co. v. Butler (Tex. Civ. App.) 185 S. W. 989; Victor Ref. Co. v. City National Bank (Tex. Civ. App.) 263 S. W. 622; St. Louis Exp. Metal Co. v. Beilharz (Tex. Civ. App.) 88 S. W. 512; S. R. Smythe Co. v. Ft. Worth Glass & Sand Co. et al., 105 Tex. 8, 142 S. W. 1157; Taber v. Interstate Building & Loan Ass'n, 91 Tex. 92, 40 S. W. 954. In the last case cited, the court holds:

"The Legislature having seen fit to prescribe as a condition to the maintenance of suits in its courts that such compliance should precede the transaction of business in the state, it follows that the filing of its articles of incorporation with the Secretary of State is a condition precedent to the maintenance of suit upon any contract or right of action accruing to such foreign corporation; and, it being a condition precedent, the fact must be both alleged and proved, to entitle the corporation to judgment in such case."

However, while not necessary in order to take advantage of same, the insufficiency of appellee's pleading in this respect was raised by the general demurrer urged thereto by appellant. The question was again raised by appellant in its objection to the court's charge and by its requested peremptory instruction, and was pointed out in appellant's motion for a new trial.

That the allegations contained in appellee's petition and the evidence introduced on the trial without conflict establish that appellee, in performing its obligations under its contracts with appellant, was, within the meaning of article 1314, V. S. T. C. S. 1914, engaged in transacting business in this state, there can be no question. St. Louis Exp. Metal Fire Roofing Co. v. Beilharz, supra.

[2] Appellee counters appellant's proposition by claiming that it is exempt from the provisions of title 25, c. 26, V. S. T. C. S. 1914, under articles 1319, Id., by reason of the fact that it is a corporation created for the purpose of "maintaining" a railway. Article 1319 reads:

"Provisions of this chapter shall not apply to corporations created for the purpose of constructing, building, operating or maintaining any railway, or to such corporations as are required

by law to procure certificates of authority to do business from the commissioner of insurance and banking."

If it can be said, under a proper interpretation of the term "maintaining," as used in said article, that appellee is a corporation created for the purpose of maintaining a railway, then appellee would have the right, without obtaining permit from the secretary of state, to do business in this state.

What position did appellee occupy in reference to carrying out the provisions of the contract on which the suit is based? This is a material inquiry. Appellee did not bring any material into the state of Texas, but merely brought its machinery and men for the purpose of performing the contract on its part. It took nothing out of the state of Texas, but merely removed therefrom its machinery and men necessary for the completion of the contract. Appellee did not sell or traffic in any commodity, but merely contracted with appellant for the transformation of clay dug from the ground of the state of Texas into ballast, and to do this it was necessary to have men and machinery furnished by appellee and also wood and coal, which appellant furnished

The result of all of the contractual relations between appellant and appellee was converting clay by appellee into ballast to be used by appellant in ballasting its lines of railway, the laborers and equipment necessary for this purpose to be obtained and furnished at the expense and under the control and direction of appellee, with the exception of that to be furnished by appellant, as above stated. The word "maintaining," in common parlance, has a generally well-defined and accepted meaning, and it is to be assumed that the Legislature intended for that word, as used in article 1319, supra, to be so understood and applied.

Webster's International Dictionary defines "maintain" to mean:

"To hold or keep in any particular state or condition, to support, to sustain, to uphold, to keep up, to keep possession of, not to surrender, to continue, not to suffer to cease or fail, to bear the expense of."

We can well accept this definition as our guide, for, as said in the case of Brenn v. City of Troy, 60 Barb. (N. Y.) 417, 421:

"Webster's [International] Dictionary * . * * has become in effect a law book on questions of construction."

In the case of Central Railroad Co. v. Collins, 40 Ga. 582, at page 624, the court, in giving effect to the word "maintaining," held:

"The 'maintaining and sustaining' of the road, has reference to keeping it in repairs, supplying it with machinery, and such like acts. * * * *"

We therefore hold that neither the services contracted to be performed, and which were in fact performed, by appellee under its contracts with appellant, nor the allegations contained in appellee's pleadings as to its corporate existence, show that it was created for the purpose of constructing, building, operating, or maintaining any railway, but, to the contrary, was only incorporated for the purpose of manufacturing ballast to be used by railways in ballasting tracks, and not for the purpose of maintaining railways by ballasting tracks owned or operated by railway companies. Hence appellee was not exempt, under article 1319, supra, from complying with the provisions of chapter 26, title 25, supra.

This conclusion requires that the judgment of the trial court be reversed and this cause dismissed, and it is so ordered.

Reversed and dismissed.

### On Motion for Rehearing.

Appellee has filed a very engaging and persuasive motion for rehearing, which we have, with much earnest interest, considered, having in mind the drastic effect of the court's conclusion as expressed in the opinion thus sought to be reviewed. The motion is based on the following language of said opinion:

"Appellee alleges in its petition that it was a private corporation, existing under and by virtue of the laws of the state of Wisconsin, but it does not allege that there had been issued to it by the secretary of state a permit authorizing it to do business in the state of Texas, and we find, as a fact, that such permit had not been issued to appellee."

In reference to the finding of fact, to wit, that such permit had not been issued, appellee in its motion says:

"It is upon this portion of the court's opinion that appellee takes most serious issue with the court. We do not believe that such a presumption, or such a finding of fact, can be indulged in to the damage and detriment of appellee. Surely the court will not say that, merely because appellee failed to allege a certain state of facts, it is warranted in finding that the converse of that state of facts is true."

[3] This court is not responsible for the condition of the record presenting this appeal, but, in dealing with same, must accept the record as faithfully presenting all of the proceedings incident to and connected with the prosecution of the case in the court below, and the perfection of the appeal therefrom to this court.

We are to assume that all facts material, either to the right to maintain the suit, or in support of defense thereto, known to exist by the parties interested in presenting such facts, have been properly alleged, and, so far as they have been able, established by the introduction of proper evidence on the hearing of the cause. Especially is this so where, as in the instant case, the failure to establish and include the omitted fact is sought to be justified, not on the ground that said fact

was not known to exist, but on the ground that the establishment of such fact was not necessary to the right to prosecute the suit.

An appellate court, is ·bound by, and must act alone upon, the information contained in the transcript of the record and the statement of facts constituting the record on appeal, or by the admission of the parties made in such way as to authorize same to be accepted and acted upon in disposing of the appeal. The certificate attached to appellee's motion for rehearing, as well as the certificate attached to appellant's reply thereto, seeking, on the one hand, to show that the necessary permit had been issued to appellee, and, on the other hand, that said permit had not been issued, cannot be considered by this court for any purpose, for to do so would be to receive evidence that should have been, but which was not, introduced before the trial court to determine the issue of fact so presented as to said permit.

[4] The conclusion of this court, "that such permit had not been issued to appellee," is not only supported, but, as we think, justified, by the acts and conduct of the appellee as reflected by the transcript of the record of the proceedings had in the trial court, and through the presentation of the case on appeal by brief for appellee, to wit, appellee in its petition alleges that it is a "private corporation, organized and existing under and by virtue of the laws of the state of Wisconsin," without alleging that a permit had been issued to it to transact business in the state of Texas. The insufficiency of the pleading in this respect was raised by general demurrer presented by appellant, which was overruled by the trial court. The question was again raised by appellant in its objection to the court's charge by appellant's requested peremptory instruction, and was pointed out in appellant's motion for a new trial, covered by appropriate assignments of error.

Undoubtedly we are justified in assuming from the record that, in reply to the position of appellant, in reference to said permit, appellee claimed that it was exempt under article 1319, V. S. T. C. S. 1914, from obtaining a permit to do business in Texas as a foreign corporation, for under no other theory of the law, viz. title 25, c. 26, V. S. T. C. S. 1914, relating to foreign corporations transacting business in this state, could the court have overruled the propositions so timely and correctly advanced by appellant. In combatting appellant's position in these respects, appellee devoted seven pages of its brief to an effort to show that, under article 1319, Id., it was relieved from complying with the provisions of said chapter 26, tit. 25, which clearly demonstrated that appellee tried the case in the court below on the theory that, in order for it to transact business in the state of Texas, it was not necessary to obtain a permit for that purpose, and therefore the logic of the situation was that it had not done so. For surely, if such permit had been obtained, it is but reasonable to assume that, instead of appellee laboring to show that no necessity existed for it to obtain same, the issuance of the permit would have been alleged and duly established.

[5] Appellee selected its own lines of procedure, and pursued same as if that were the only course available, and, having failed to follow the provisions of the law which would have secured to it a full hearing in the courts of this state upon its demand, it is not now in position to complain of the harshness of the law denying it the right to maintain its suit in the courts of the state for failure to comply with its provisions, for it was apprised, not only of the importance of complying therewith, but of the result that would follow a failure to so comply, as is clearly revealed by article 1318, V. S. T. C. S. 1914.

However, in view of the fact that the record does not, on its face, affirmatively show that appellee had not applied for and obtained a permit to do business in this state, the opinion will be modified to the extent of withdrawing therefrom the finding as a fact, as if established affirmatively by the record, that such permit had not been duly obtained; it being sufficient to sustain the judgment of this court to find that appellee was a foreign corporation, doing business within the state, within the meaning of article 1314, V. S. T. C. S. 1914, that it did not allege that there had been issued to it a permit to do business in the state of Texas, and failed to establish such allegation by proper proof.

Motion for rehearing is therefore overruled.